******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# HOUSING AUTHORITY OF THE TOWN OF GREENWICH *v.* ROMANA SANCHEZ RODRIGUEZ ET AL.
## (AC 39220)

Keller, Prescott and Bear, Js.

*Syllabus*

The plaintiff housing authority sought, by way of summary process, to regain possession of certain premises leased to the defendant tenant, R. R resided with her two adult children on the premises when her son, C, was arrested on another property owned by the plaintiff and charged with certain drug related offenses. Thereafter, the plaintiff served R with a pretermination notice, as required by statute (§ 47a-15), informing her of its intent to terminate her lease for violations of the prohibition against illegal drug related criminal activity on its property. In accordance with the plaintiff's grievance procedures, R requested and received an informal meeting with M, the deputy director of the housing authority, who agreed that the plaintiff would not evict R at that time, but issued a written notice that any future arrest of C would result in the commencement of eviction proceedings. Approximately four months later, C was arrested on the premises at R's apartment and charged with similar drug related offenses. The plaintiff subsequently commenced the present summary process action by serving a notice to quit. R filed a motion to dismiss on the ground that she had not been served with a pretermination notice prior to service of the notice to quit, as required by § 47a-15, and that the court therefore lacked subject matter jurisdiction. Pursuant to § 47a-15, a landlord, prior to the commencement of a summary process action, is required to deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice, and the landlord may terminate the rental agreement in accordance with the provisions of the summary process statute (§ 47a-23) if substantially the same act or omission for which notice was given recurs within six months. The trial court concluded that the plaintiff was not required to provide a second pretermination notice under the circumstances of this case, denied the motion to dismiss, and rendered judgment of possession in favor of the plaintiff, from which R appealed to this court. *Held* that the trial court properly found that the pretermination notice that the plaintiff sent following C's first arrest satisfied the clear and unambiguous requirements of § 47a-15: the pretermination notice specified the acts or omissions that constituted the breach of the lease, namely, C's drug related activity, and where, as here, C was arrested for a second instance of drug related activity less than four months after the pretermination notice was sent and C's arrest involved substantially the same act or omission for which the pretermination notice had been given, pursuant to § 47a-15 the plaintiff was not required to send a second pretermination notice prior to commencing eviction proceedings and could rely on the pretermination notice that was served on R approximately four months prior to the service of the notice to quit; moreover, although R claimed that, pursuant to federal regulations, the decision of M at the informal meeting not to pursue eviction at that time negated the effect of the pretermination notice and conclusively resolved the question of whether the plaintiff could evict her on the basis of that notice, the meeting with M was not a formal hearing that resulted in a decision by a hearing officer, which would have been binding on the plaintiff under federal regulations but was never rendered under the facts of this case, as M, the deputy director of the housing authority, was not an impartial hearing officer within the meaning of the federal regulations and R requested and received an informal meeting, not a formal hearing, as those terms are defined in those regulations.

Argued September 12—officially released November 21, 2017

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session, where the court, *Rodriguez, J.*, denied the motion to dismiss filed by the named defendant; thereafter, the matter was tried to the court; judgment for the plaintiff, from which the named defendant appealed to this court. *Affirmed*.

*Frederic S. Brody*, for the appellant (named defendant).

*Louis P. Pittocco*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant[1] Romana Sanchez Rodriguez appeals from the judgment of the trial court rendered in favor of the plaintiff, the Housing Authority of the Town of Greenwich (housing authority), on its summary process complaint. On appeal, the defendant claims that the court did not have jurisdiction to hear the plaintiff's case because the plaintiff failed to serve her with a second pretermination notice pursuant to General Statutes § 47a-15,[2] and that a grievance hearing decision barred the plaintiff from evicting her on the basis of alleged lease violations described in a prior pretermination notice that the plaintiff served on her within six months of the notice to quit. We disagree. Accordingly, we affirm the judgment of the court.

The following undisputed facts and procedural history are relevant to this appeal. The plaintiff owns and operates Wilbur Peck Court, a low income public housing complex in Greenwich. The lease agreement between the plaintiff and the defendant lists the defendant as the head-of-household tenant and her adult children, Elizabeth Lora Rodriguez and Charlee Javier Rodriguez,[3] as household members of an apartment at Wilbur Peck Court.

On November 26, 2014, Charlee was arrested at Armstrong Court, a housing authority property, and charged with possession of a controlled substance, possession with the intent to distribute, and possession of a controlled substance within 1500 feet of a school. Following the arrest, on December 11, 2014, the plaintiff sent the defendant a pretermination notice, commonly referred to as a *Kapa*[4] notice, pursuant to § 47a-15. The pretermination notice informed the defendant of the plaintiff's intent to terminate the lease for violation of § 15 (a) (7) of the lease[5] by service of a notice to quit possession of the premises on December 29, 2014. Upon receiving the pretermination notice, the defendant exercised the option given in the notice to request an informal meeting in accordance with the plaintiff's grievance procedure.

On December 18, 2014, an informal meeting took place between the defendant, Elizabeth, Charlee, and Terry Mardula, the deputy director of the housing authority. Following the meeting, Mardula sent a letter dated December 19, 2014, memorializing the discussion that took place. Mardula stated that the plaintiff would not attempt to evict the defendant at that time, but with the following condition: "[A]ny future arrest of Charlee Javier Rodriguez will result in the [housing authority] taking immediate legal action commencing in eviction proceedings against the family. . . . Hopefully [Charlee] Rodriguez will comply with the provisions of the lease and not jeopardize the continue[d] occupancy of the family at Wilbur Peck Court."

Approximately four months later, on March 30, 2015,

Charlee was arrested at the defendant's apartment in Wilbur Peck Court and charged with possession of a controlled substance, possession with intent to sell, possession of narcotics, operating a drug factory, possession of marijuana and drug paraphernalia, and sale or possession of narcotics within 1500 feet of a daycare facility. Upon learning of the arrest, the plaintiff began to take steps to evict the defendant. On April 7, 2015, the plaintiff served the defendant with a notice to quit possession of the premises, as required by General Statutes § 47a-23 (a),[6] by April 14, 2015. The notice to quit set forth, as reasons for the termination of the lease, violations of §§ 10 (k), 10 (r), 10 (s),[7] and 15 (a) (7) of the lease and number 21 of the housing authority's rules and regulations[8]—all of which related to the prohibition against illegal drug related criminal activity on housing authority property. Despite receipt of the notice to quit, the defendant remained in possession of the premises.

Thereafter, on April 22, 2015, the plaintiff commenced the present summary process action. On May 6, 2015, the defendant filed a motion to dismiss, claiming that the plaintiff had failed to serve her with a second valid pretermination notice, pursuant to § 47a-15, prior to serving the notice to quit. The plaintiff filed an opposition to the defendant's motion on May 15, 2015, arguing that it had served the defendant with a pretermination notice on December 11, 2014, and the defendant was informed at an informal meeting held December 18, 2014, that the lease would be terminated if Charlee's drug related activity continued. On June 30, 2015, the court, *Rodriguez, J.*, denied the defendant's motion to dismiss. Thereafter, a trial was held on December 1, 2015. Following the close of testimony, the court ordered the parties to file posttrial briefs.

On May 5, 2016, the court, having found that the pretermination notice served on the defendant on December 11, 2014, was sufficient, rendered judgment in favor of the plaintiff and granted immediate possession of the premises to the plaintiff. The court held that "there was no need for the plaintiff to provide the [defendant] with a second *Kapa* notice, and that the plaintiff's failure to do so [did] not have any impact on the court's decision . . ." The court further stated: "[T]he plaintiff was required to provide the [defendant] with a pretermination notice prior to initiating this action. The plaintiff did provide the [defendant] with a pretermination notice in December [2014], and the plaintiff was not required to provide a second notice in March [2015]. Therefore, the [defendant's] special defense that the plaintiff's complaint was procedurally deficient is not persuasive . . . ." This appeal followed.

On appeal, the defendant claims that the court did not have jurisdiction to consider the plaintiff's summary process complaint because the plaintiff failed to serve

the defendant with a second pretermination notice, pursuant to § 47a-15, prior to the service of the notice to quit, and the December 11, 2014, pretermination notice was not a proper jurisdictional prerequisite to the service of the notice to quit because a "grievance hearing decision" barred the plaintiff from evicting the defendant based on the lease violations described in the December 11, 2014, pretermination notice. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007); *Firstlight Hydro Generating Co.* v. *First Black Ink, LLC*, 143 Conn. App. 635, 639, 70 A.3d 174, cert. denied, 310 Conn. 913, 76 A.3d 629 (2013).

"Summary process is a statutory remedy which enables the landlord to recover possession from the tenant upon the termination of a lease." *Marrinan* v. *Hamer*, 5 Conn. App. 101, 103, 497 A.2d 67 (1985). "Pursuant to § 47a-15, before a landlord may proceed with a summary process action, except in those situations specifically excluded, the landlord must first deliver a [pretermination] notice to the tenant specifying the alleged violations and offer the tenant a . . . period to remedy." *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 734, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011). "The legislative purpose [of a pretermination or *Kapa* notice] is to discourage summary evictions against first offenders . . . ." (Internal quotation marks omitted.) Id., 734–35. Section 47a-15 is "separate from and preliminary to the maintenance of a summary process action pursuant to . . . § 47a-23." (Internal quotation marks omitted.) Id., 735. "The Superior Court has jurisdiction to hear a summary process action only if the landlord has previously served the tenant with a notice to quit" pursuant to § 47a-23. *Housing Authority* v. *Harris*, 225 Conn. 600, 605, 625 A.2d 816 (1993).

The text of § 47a-15 is clear and unambiguous: "Prior to the commencement of a summary process action . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. . . . [I]f substantially the same act or omission for which notice was given recurs within six months, the landlord may terminate the rental agreement in accordance with the provisions of [§§] 47a-23 to 47a-23b, inclusive." In the present case, substantially the same acts for which notice was given to the defendant on December 11, 2014, recurred within six months. As previously described, the plaintiff served the defendant with the pretermination notice on December 11, 2014, after Charlee was arrested for illegal drug related activity on housing authority property. Follow-

ing an informal meeting that took place on December 18, 2014, the plaintiff elected not to pursue eviction for that lease violation, but instead warned the defendant that any future arrest of Charlee would result in the immediate initiation of summary process proceedings. Less than four months later, on March 30, 2015, Charlee was arrested a second time for illegal drug related activity on housing authority property. Upon learning of the arrest, the plaintiff elected, pursuant to § 47a-15, to terminate the lease by serving a notice to quit on the defendant pursuant to § 47a-23, as Mardula stated would occur in his letter to the defendant dated December 19, 2014. Pursuant to the clear language of § 47a-15, no new pretermination notice was required.

Although the second lease violation occurred within six months of the December 11, 2014 pretermination notice, the defendant argues that the plaintiff's decision, after the informal meeting that took place on December 18, 2014, not to pursue eviction at that time negated the effect of the December 11, 2014 pretermination notice and "conclusively resolved the question of whether [the plaintiff] could proceed to evict her."[9] Specifically, the defendant argues that "[t]he trial court misunderstood the nature of the federally mandated grievance process which [the defendant] availed herself of . . . [and] failed to fully comprehend the consequence of the hearing officer's decision. . . . The trial court failed to recognize that the informal meeting was an adjudicative proceeding . . . [and] that the hearing officer's decision was binding upon [the plaintiff]." In response, the plaintiff argues that the defendant has "mistaken the informal meeting that took place on December 18, 2014, with a grievance hearing." Because the parties disagree as to the nature of the December 18, 2014 meeting and the impact that the meeting had on the validity of the December 11, 2014 pretermination notice, we address first whether the meeting was an informal meeting or a formal grievance hearing.

Where the premises are public housing, as are the premises in the present case, the federal regulations codified at 24 C.F.R. Part 966, Public Housing Lease and Grievance Procedure, must be complied with in resolving a grievance between a public housing authority and a tenant. See 24 C.F.R. § 966.50 (2014). Pursuant to 24 C.F.R. § 966.54 (2014),[10] a grievance may be settled informally. If a grievance cannot be resolved informally, a tenant is entitled to a formal hearing before a hearing officer. See 24 C.F.R. § 966.56 (2014). Following a formal hearing, "[t]he decision of the hearing officer or hearing panel shall be binding on the [public housing authority] which shall take all actions, or refrain from any actions, necessary to carry out the decision . . . ." 24 C.F.R. § 966.57 (b) (2014).

Upon receiving the pretermination notice, the defendant exercised the option given in the notice to request

an informal meeting in accordance with the plaintiff's grievance procedure. She received what she requested.

Although Mardula, the deputy director of the housing authority, presided over the December 18 meeting,[11] he was not an impartial person and, therefore, he was not a hearing officer within the meaning of § 996.56 (a).[12] The defendant's written grievance was in fact discussed informally and settled without a hearing. As the defendant acknowledges in her principal brief, an "informal meeting is part of the grievance process which may lead to a settlement of the complaint *without resort to a full hearing*."[13] (Emphasis added.) Pursuant to § 966.54, an informal settlement of a tenant grievance may occur, in which case the housing authority is required to send a summary of the discussion within a reasonable time specifying "the names of the participants, dates of meeting, [and] the nature of the proposed disposition of the complaint and the specific reasons therefor . . . ." The plaintiff's December 19, 2014 letter memorializing the informal meeting did just as § 966.54 requires—it summarized the parties' discussion and described the proposed disposition that eviction would not be pursued at that time, but that summary process proceedings would immediately commence for any future arrest of Charlee for illegal drug related activity. A decision by a hearing officer was never rendered.[14]

Having determined that the December 18, 2014 meeting did not result in a decision by a hearing officer, we next address whether a new pretermination notice was required following the plaintiff's decision at the informal meeting not to pursue eviction at that time. In arguing that a new pretermination notice was required, the defendant cites two cases in which a summary process complaint had been filed, and the courts held that the withdrawal or adjudication of the summary process suit required that a new *notice to quit* be served. See *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 974 A.2d 626 (2009); *Housing Authority* v. *Hird*, 13 Conn. App. 150, 156–57, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988). Because neither case makes any mention of a pretermination notice under § 47a-15, they are not persuasive in resolving the matter at hand.[15] Similarly, the defendant's reliance on *Housing Authority* v. *Harris*, supra, 225 Conn. 609, is not persuasive because, in that case, unlike in the present case, no pretermination notice had been served at all prior to service of the notice to quit.

The defendant points to no case law, and we have found none, that requires a plaintiff to issue a second pretermination notice where substantially the same act or omission described in a prior pretermination notice recurs within six months of that prior pretermination notice.[16] See General Statutes § 47a-15. Charlee was arrested for substantially the same acts approximately

four months after the December 11, 2014 pretermination notice was sent.[17] Thus, no new pretermination notice was required.

The defendant has not provided viable support for her argument that the plaintiff's decision after the informal meeting nullified or barred its further reliance on the prior pretermination notice and precluded it from proceeding, within the six month period referred to in § 47a-15, to terminate the defendant's lease based on that prior notice. The statute was designed for the exact situation that occurred here—to create a "reconciliation period [to allow] errant tenants to remedy their first miscue . . . . The legislative purpose is to discourage summary evictions against first offenders; the machinery of summary process is suspended pending any reoccur[r]ence of substantially the same violation within six months." (Citation omitted; internal quotation marks omitted.) *Marrinan* v. *Hamer*, supra, 5 Conn. App. 104. Thus, the six month period only applies if a plaintiff elects not to evict a tenant because of the first lease violation and, instead, provides the tenant with a second chance—which is what happened here.

Further, the defendant understood that, although she was being given a second chance dependent on Charlee not engaging in further criminal behavior, the plaintiff would immediately initiate summary process proceedings if the same or a substantially similar breach of the lease, or of the plaintiff's rules and regulations, recurred.[18] In its December 19, 2014 letter, the plaintiff warned the defendant and her adult children that, although summary process proceedings would not be pursued at that time, "any future arrest of Charlee Javier Rodriguez will result in the [housing authority] taking immediate legal action commencing in eviction proceedings against the family. . . . Hopefully [Charlee] Rodriguez will comply with the provisions of the lease and not jeopardize the continue[d] occupancy of the family at Wilbur Peck Court."

In conclusion, pursuant to the clear and unambiguous text of § 47a-15, the plaintiff was not required to serve the defendant with a second pretermination notice when Charlee's second arrest for illegal drug related activities occurred within six months of the first arrest, because the arrests were for substantially the same acts. In these circumstances, the plaintiff could rely on the pretermination notice that was served on the defendant approximately four months prior to the service of the notice to quit. The court thus properly found that the December 11, 2014 pretermination notice satisfied the clear and unambiguous text of § 47a-15, and thus satisfied the § 47a-15 prerequisite for the plaintiff's summary process action.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Elizabeth Lora Rodriguez and Charlee Javier Rodriguez also were defen-

dants in the summary process proceeding, but they have not participated in this appeal. Accordingly, we refer in this opinion to Romana Sanchez Rodriguez as the defendant.

[2] General Statutes § 47a-15 provides in relevant part: "Prior to the commencement of a summary process action, except in the case in which the landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based on nonpayment of rent, on conduct by the tenant which constitutes a serious nuisance or on a violation of subsection (h) of section 47a-11, if there is a material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or materially affects the physical condition of the premises, or if there is a material noncompliance by the tenant with the rental agreement or a material noncompliance with the rules and regulations adopted in accordance with section 47a-9, and the landlord chooses to evict based on such noncompliance, the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. If such breach can be remedied by repair by the tenant or payment of damages by the tenant to the landlord, and such breach is not so remedied within such fifteen-day period, the rental agreement shall terminate except that (1) if the breach is remediable by repairs or the payment of damages and the tenant adequately remedies the breach within such fifteen-day period, the rental agreement shall not terminate; or (2) if substantially the same act or omission for which notice was given recurs within six months, the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive. . . ."

[3] Because these parties share the last name Rodriguez, we refer to them herein by their first names for purposes of clarity.

[4] *Kapa Associates* v. *Flores*, 35 Conn. Supp. 274, 408 A.2d 22 (1979).

[5] Section 15 (a) of the lease states in relevant part: "[The housing] [a]uthority shall not terminate or refuse to renew the lease for other than . . . good cause. 'Good Cause' . . . includes but is not limited to . . . (7) [i]llegal drug-use or criminal drug activity which includes, but is not limited to, such use or activity involving possession, sale or distribution of controlled substances. . . . Criminal activity is cause for eviction even in the absence of conviction or arrest . . . ."

[6] General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy of . . . any apartment in any building . . . such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such . . . apartment or dwelling unit, at least three days . . . before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

[7] Section 10 of the lease provides in relevant part: "The Tenant and authorized residents (Household Members) as identified in this Lease, guests, visitors or persons under the Tenant's control shall . . .

"(k) Refrain from illegal or other activity which impairs the physical or social environment of any [housing authority] property . . .

"(r) Not engage in criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents . . .

"(s) Not engage in drug-related criminal activity, on or near [housing authority] property. The term 'drug-related criminal activity' means the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use a controlled substance or drug paraphernalia . . . ."

[8] Number 21 of the housing authority's rules and regulations states in relevant part: "[U]nlawful possession or unlawful use of narcotic drugs or drug paraphernalia or criminal or unlawful activities on Authority property are prohibited and will be cause for immediate termination of a lease. The Tenant is responsible for all authorized residents, guests and persons under Tenant's control."

[9] The defendant's argument pertains to administrative res judicata, which is an argument on appeal that was not raised in the trial court. Because the defendant did not properly plead res judicata as a special defense in her answer in the summary process proceeding; see Practice Book § 10-50; and she did not otherwise properly raise it during the proceedings before the trial court, we need not address it on appeal. See *State* v. *Hilton*, 45 Conn. App. 207, 222, 694 A.2d 830 ("[w]e are not bound to consider claims of law not properly raised at trial"), cert. denied, 243 Conn. 925, 701 A.2d 659 (1997), cert. denied, 522 U.S. 1134, 118 S. Ct. 1091, 140 L. Ed. 2d 147 (1998).

[10] 24 C.F.R. § 966.54 (2014) provides: "Any grievance shall be personally

presented, either orally or in writing, to the [public housing authority] office or to the office of the project in which the complainant resides so that the grievance may be discussed informally and settled without a hearing. A summary of such discussion shall be prepared within a reasonable time and one copy shall be given to the tenant and one retained in the [public housing authority's] tenant file. The summary shall specify the names of the participants, dates of meeting, the nature of the proposed disposition of the complaint and the specific reasons therefor, and shall specify the procedures by which a hearing . . . may be obtained if the complainant is not satisfied."

[11] No hearing officer presided over the December 18, 2014, meeting. A hearing officer, within the meaning of § 966.56 (a), is "an impartial person or persons appointed by the [public housing authority], other than the person who made or approved the decision under review . . . ." 24 C.F.R § 966.55 (b) (2014).

[12] In support of her argument, the defendant cites Mardula's testimony at trial. On cross-examination, the defendant's counsel asked Mardula whether he was the hearing officer at the December 18, 2014 meeting, and Mardula responded "correct." Mardula, an employee of the plaintiff and the person who prepared and signed the pretermination notice, was not an impartial person, and, therefore, he was not a hearing officer within the meaning of § 966.56 (a). We are not bound by his statement that he was the hearing officer because it is contrary to law.

[13] The defendant also concedes in her reply brief that no formal hearing took place. The defendant asserts that "[t]he informal meeting between [the defendant] and . . . Mardula was the first step in [the plaintiff's] grievance process. . . . With the grievance settled, *there was no need for a formal hearing.*" (Emphasis added.) The defendant argues, however, that the only logical way to read § 966.54 is to find that a settlement at an informal meeting that is satisfactory to the tenant is binding upon the plaintiff, on the basis of the fact that a formal hearing may be requested "if the complainant is not satisfied." In so arguing, it appears that the defendant confuses the issue. The plaintiff did not "[back] away from a settlement of a tenant's grievance reached following an informal meeting," as the defendant asserts. Rather, as discussed in greater detail herein, the plaintiff acted in accordance with the settlement reached at the informal meeting by not pursuing eviction initially after the first violation, but doing so after the second violation.

[14] Because the December 18, 2014 meeting was an informal meeting, and Mardula was not a hearing officer, we need not address the defendant's argument that Mardula's decision was binding on the housing authority pursuant to § 966.57 (b).

[15] It is well recognized that the purposes of a pretermination notice and a notice to quit are different. "A pretermination notice pursuant to § 47a-15 does not have the effect of terminating a tenancy or of altering the relationship of the landlord and tenant. . . . In contrast . . . service of a notice to quit possession pursuant to § 47a-23 is typically an unequivocal act terminating a lease agreement with a tenant." (Citation omitted.) *St. Paul's Flax Hill Co-operative* v. *Johnson*, supra, 124 Conn. App. 735.

[16] The plaintiff also argues that no pretermination notice was required at all under § 47a-15 due to Charlee's illegal drug use and criminal activity, which falls within the "serious nuisance" exception to the notice requirement. Because we ultimately conclude that the December 11, 2014 pretermination notice was sufficient, and no new notice was required, we need not address further whether the plaintiff was required to serve a pretermination notice under these circumstances.

[17] The defendant argues that "[t]o allow the December 11, 2014 pretermination notice to be the basis of some future lease violation would, as [our] Supreme Court described [in *Waterbury Twin, LLC*] 'hang like the sword of Damocles over [the defendant's] head.' " This is unpersuasive for two reasons. First, the court in *Waterbury Twin, LLC*, was referring to a notice to quit, not a pretermination notice. See *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, supra, 292 Conn. 460–61. Second, the pretermination notice would not have been "held over" the defendant's "head" because, if six months had passed since the first violation, service of a new notice would have been required. Similarly, if the violation was of a different type than the one previously noticed, service of a new notice would have been required.

[18] At trial, the following examination took place:

"[The Plaintiff's Counsel]: But you knew that if something else happened, if there was another arrest, that you could be evicted, is that correct?

"[The Defendant]: Yes I knew.

* * *

"[The Plaintiff's Counsel]: Were you willing to take the chance that if something else happened you would be evicted?

"[The Defendant]: Yes."

The defendant thus admitted that the plaintiff was giving her a second chance to retain her apartment, despite Charlee's criminal activities, but with the warning that summary process proceedings would be pursued immediately if Charlee's illegal drug related activity continued.

————————————————