******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# BAYVIEW LOAN SERVICING, LLC *v.* PARK CITY SPORTS, LLC, ET AL.
## (AC 38654)

Lavine, Bright and Pellegrino, Js.

*Syllabus*

The plaintiff loan servicing company sought to foreclose a mortgage on certain real property owned by the defendant P Co., which, through its manager, the defendant C, had executed a promissory note payable to I Co. The note was secured by a mortgage on the subject property, and C, in his individual capacity, executed a guarantee agreement for the note in favor of I Co. Thereafter, I Co. assigned the mortgage to the plaintiff, and, when P Co. failed to make its monthly payments pursuant to the note, the plaintiff commenced this foreclosure action. After the defendants filed an answer, the plaintiff filed a motion for summary judgment as to liability and an affidavit in support thereof. In response, the defendants filed an amended answer and special defenses and an objection to the plaintiff's motion. In their supporting memorandum of law, the defendants challenged the plaintiff's standing to bring the action on the ground that it had failed to establish the chain of endorsements of the original note payable to I Co. The defendants also submitted an affidavit from C but did not submit any documentary evidence to support C's statements therein. Following a hearing, the plaintiff filed a supplemental affidavit and accompanying exhibits establishing the chain of endorsements of the note. The defendants, in turn, filed a supplemental memorandum of law in opposition to the motion for summary judgment but did not submit any counteraffidavits or accompanying documentation. The trial court granted the motion for summary judgment, concluding that the plaintiff had established a prima facie case for its foreclosure action and that the defendants had failed to establish that there were any issues of material fact concerning their special defenses. The court also determined that there was an issue of fact as to the accuracy of the plaintiff's federal loss affidavit but that the plaintiff could correct the error prior to obtaining a judgment of strict foreclosure. The plaintiff then filed a new federal loss affidavit that specifically asserted that the loan was ineligible for any loss mitigation programs. Thereafter, the plaintiff filed a motion for a judgment of strict foreclosure. The court granted the motion and rendered a judgment of strict foreclosure, from which the defendants appealed to this court. *Held*:

1. The defendants' claim that the trial court lacked subject matter jurisdiction over the foreclosure action because the plaintiff's federal loss affidavit failed to comply with a certain standing order of the Superior Court was unavailing; even if the federal loss affidavit did not comply with the subject standing order, the trial court did not lack subject matter jurisdiction over the action, as standing orders are not constitutionally or legislatively created, and, therefore, a failure to comply with them does not implicate the court's subject matter jurisdiction.

2. The defendants could not prevail on their claim that the trial court erred in granting the plaintiff's motion for summary judgment, as they failed to meet their burden of presenting evidence that demonstrated the existence of a genuine issue of material fact: the defendants failed to recite specific facts or submit documentary evidence as to their claims that there were issues of fact regarding the plaintiff's alleged misapplication or miscalculation of certain payments related to the loan, when P Co. defaulted on the loan, the propriety of the default notice and whether the note was properly endorsed and assigned to the plaintiff, and any issue of fact regarding the validity of the original federal loss affidavit was immaterial because prior to filing its motion for a judgment of strict foreclosure, the plaintiff filed a new federal loss affidavit asserting that the loan was ineligible for any loss mitigation programs, and the court accepted the new affidavit prior to rendering its judgment.

3. The trial court properly concluded that the defendants' special defenses that the loan was not in default and that the plaintiff's conduct violated the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.) were

legally insufficient; the special defenses were dependent on the defendants' claim that the plaintiff had incorrectly applied certain escrow payments or miscalculated the payments that were due pursuant to the note, and the defendants failed to provide the trial court with any evidence related to the plaintiff's alleged misapplication or miscalculation of their payments.

4. The record was inadequate to review the defendants' claim that the trial court abused its discretion in denying C's petition to participate in the foreclosure mediation program; the trial court summarily denied C's petition, and the defendants did not file a motion for articulation to ascertain the basis of the court's decision and failed to request a transcript of the hearing on the petition, and, therefore, any decision made by this court concerning the claim would be entirely speculative.

Submitted on briefs January 9—officially released April 10, 2018

*Procedural History*

Action to foreclose a mortgage on certain of the named defendant's real property, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the defendant William McCarthy et al. were defaulted for failure to appear and the defendant Fairfield County Bank was defaulted for failure to plead; thereafter, the court, *Bellis, J.*, denied the petition to participate in the foreclosure mediation program filed by the defendant Robert P. Carter; subsequently, the court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee, granted the plaintiff's motion for summary judgment as to liability; thereafter, the court, *Hon. Richard P. Gilardi*, judge trial referee, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant et al. appealed to this court. *Affirmed*.

*Charles C. Hallas*, for the appellants (named defendant et al.).

*Benjamin T. Staskiewicz*, for the appellee (plaintiff).

*Opinion*

BRIGHT, J. The defendants, Park City Sports, LLC (Park City) and Robert P. Carter,[1] appeal from the trial court's judgment of strict foreclosure rendered in favor of the plaintiff, Bayview Loan Servicing, LLC. On appeal, the defendants claim that the trial court (1) lacked subject matter jurisdiction over the foreclosure action due to the plaintiff's failure to comply with a standing order of the Superior Court, (2) improperly granted the plaintiff's motion for summary judgment as to liability, (3) improperly determined that the defendants' special defenses were legally insufficient, and (4) improperly denied Carter's petition to participate in the foreclosure mediation program. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On August 13, 2004, Park City, through its manager, Carter, executed a promissory note, pursuant to which it promised to pay to the order of InterBay Funding, LLC (InterBay), the principal sum of $390,000. The note was secured by a mortgage on 1382-1386 Park Avenue in Bridgeport in favor of InterBay. There are four units in the building located on the property: a four bedroom residential apartment and three commercial storefronts. Carter, in his individual capacity, executed a guarantee agreement for the note in favor of InterBay. Thereafter, InterBay assigned the mortgage on the subject property, and endorsed the note, to the plaintiff.

Beginning on December 1, 2012, and every month thereafter, Park City failed to make monthly payments due pursuant to the note. As a result, the plaintiff commenced this foreclosure action in November, 2013. The defendants filed an answer in April, 2014. On January 21, 2015, the plaintiff filed the operative revised complaint seeking foreclosure of the mortgage on the property. On March 24, 2015, the plaintiff moved for summary judgment as to liability only. Subsequently, on April 15, 2015, the defendants filed an amended answer and special defenses, alleging, inter alia, that the plaintiff had (1) failed to credit the defendants' payments properly, (2) submitted an inaccurate affidavit regarding the defendants' eligibility for federal loss mitigation programs (federal loss affidavit), and (3) violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] On that same day, the defendants filed an objection to the motion for summary judgment and an accompanying memorandum of law.

In their memorandum of law in opposition to summary judgment, the defendants challenged whether the plaintiff had standing to bring this action. The defendants claimed that the plaintiff had failed to establish the chain of endorsements of the note that was made payable to the original lender, InterBay. In support of

their opposition, the defendants submitted Carter's affidavit that essentially recited the allegations in their special defenses, but they did not submit any documentary evidence to support the conclusory statements in Carter's affidavit. The affidavit also stated that the subject property is Carter's principal residence, which the plaintiff, in its federal loss affidavit, had denied. Following a hearing on April 20, 2015, the plaintiff filed a supplemental affidavit and accompanying exhibits establishing the chain of endorsements for the note. In their supplemental memorandum of law in opposition to summary judgment, the defendants asserted various issues with regard to the plaintiff's supplemental affidavit and accompanying exhibits, but they did not submit any counteraffidavits or accompanying documentation in support of their claims.

On September 23, 2015, the trial court, *Hon. Alfred J. Jennings, Jr.*, judge trial referee, granted the motion for summary judgment. In its order, the court concluded that the plaintiff had established a prima facie case for its foreclosure action. Specifically, the court found that the plaintiff's affidavit and accompanying exhibits established that the plaintiff was the owner of the note and mortgage at the time that the action was commenced, that Park City had defaulted on the note beginning on December 1, 2012, and that the plaintiff had sent the required notice of default before commencing the foreclosure action. The court further concluded that the defendants failed to establish that there were any issues of material fact concerning their special defenses. Although the court determined that there was an issue of fact as to the accuracy of the plaintiff's federal loss affidavit because the affidavit provided that the subject property is not "owner-occupied," the court concluded that the plaintiff could correct this error prior to obtaining a judgment of strict foreclosure.

Following the court's order granting the motion for summary judgment, the plaintiff filed a new federal loss affidavit on September 30, 2015. On October 28, 2015, the plaintiff filed a motion for a judgment of strict foreclosure, which the court, *Hon. Richard P. Gilardi*, judge trial referee, granted on November 16, 2015. The court rendered a judgment of strict foreclosure with the law days commencing on March 15, 2016. This appeal followed.[3]

I

The defendants claim that the court lacked subject matter jurisdiction over the plaintiff's foreclosure action due to the plaintiff's alleged failure to comply with the standing order of the Superior Court that required that the plaintiff file a fully executed copy of the Judicial Branch form entitled "AFFIDAVIT Federal Loss Mitigation Programs," form JD-CL-114, with its foreclosure complaint.[4] See Mortgage Foreclosure Standing Order Federal Loss Mitigation Programs, form

JD-CV-117. We disagree.

"Although the term is sometimes loosely used, 'jurisdiction' in proper usage is the power in a court to hear and determine the cause of action presented to it. . . . It is axiomatic that [a court's] jurisdiction is derived from the constitutional or statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed. *Thus, the determination of the existence and extent of [a court's] jurisdiction depends upon the terms of the statutory or constitutional provisions in which it has its source.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Cornelius*, 170 Conn. App. 104, 115, 154 A.3d 79, cert. denied, 325 Conn. 922, 159 A.3d 1171 (2017). "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Housing Authority* v. *Rodriguez*, 178 Conn. App. 120, 126, 174 A.3d 844 (2017).

"The last page of the Practice Book pertaining to Superior Court Standing Orders explains: 'Standing Orders are provided on the Judicial Branch website for the convenience of the bench and bar. They are not adopted by the Superior Court judges and are not Practice Book rules.' Additionally, at the top of the form that sets forth the uniform standing orders, it is stated in bold type: 'Unless otherwise ordered by the Court, these are the Standing Orders for Foreclosures by Sale.' . . . One can infer from these published caveats that the uniform standing orders do not carry the weight of statutes or rules of practice, but, rather, that the court may exercise discretion in applying them." (Emphasis omitted; internal quotation marks omitted.) *Norwich* v. *Norwich Harborview Corp.*, 156 Conn. App. 45, 52, 111 A.3d 956 (2015).

The defendants claim that the plaintiff incorrectly indicated on the federal loss affidavit that the loan is ineligible for review under the federal programs because "[t]he property is not owner-occupied, is vacant, is condemned, and/or has more than four units." The plaintiff maintains that the owner of the subject property is Park City, and, therefore, the fact that Carter resides at the property does not mean that it is "owner-occupied." The plaintiff further argues that even if the original federal loss affidavit was incorrect, a new affidavit was filed on September 30, 2015, prior to the rendering of the judgment of strict foreclosure on October 28, 2015. Our resolution of the defendants' claim does not require us to consider whether the plaintiff's federal loss affidavit was accurate because, even assuming that the plaintiff's federal loss affidavit did not comply with the standing order of the Superior Court, the defendants' jurisdictional claim fails.

First, the standing order specifically provides that if

the plaintiff fails to comply with the order, "a motion for default or motion for judgment filed by the plaintiff *may* not be granted until the affidavit is filed *or upon order of the court.*" (Emphasis added.) As was noted in *Norwich* v. *Norwich Harborview Corp.*, supra, 156 Conn. App. 52, one can infer from the "caveats that the uniform standing orders do not carry the weight of statutes or rules of practice . . . ."

Second, standing orders are not rules of practice, and, even if they were, they would not create a condition precedent to jurisdiction. See, e.g., *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008) ("[w]e repeatedly have held . . . that time periods prescribed by the rules of practice are fixed by a rule of this court . . . [and are] not a constitutionally or legislatively created condition precedent to the jurisdiction of this court" [internal quotation marks omitted]). Likewise, standing orders are not constitutionally or legislatively created, and, therefore, a failure to comply with them does not implicate the court's subject matter jurisdiction. See *Deutsche Bank National Trust Co.* v. *Cornelius*, supra, 170 Conn. App. 115 ("the determination of the existence and extent of [a court's] jurisdiction depends upon the terms of the statutory or constitutional provisions in which it has its source" [emphasis omitted; internal quotation marks omitted]).

Accordingly, even if we assume that the plaintiff's federal loss affidavit did not comply with the standing order of the Superior Court, the trial court did not lack subject matter jurisdiction over this foreclosure action.

II

The defendants next claim that the trial court erred in granting the plaintiff's motion for summary judgment because there were genuine issues of material fact concerning: (1) payments sent to the plaintiff that were not applied properly; (2) when Park City defaulted on the loan and whether the plaintiff's notice of default was proper; (3) whether the note properly was assigned to the plaintiff; and (4) the validity of the plaintiff's federal loss affidavit. We are not persuaded.

We begin by setting forth the applicable standard of review and legal principles. "Appellate review of the trial court's decision to grant summary judgment is plenary. . . . [W]e must [therefore] decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *McFarline* v. *Mickens*, 177 Conn. App. 83, 90, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, A.3d (2018).

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law. . . . A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Diamond 67, LLC* v. *Oatis*, 167 Conn. App. 659, 675, 144 A.3d 1055, cert. denied, 323 Conn. 927, 150 A.3d 228 (2016).

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Internal quotation marks omitted.) *21st Mortgage Corp.* v. *Schumacher*, 171 Conn. App. 470, 484, 157 A.3d 714, cert. denied, 325 Conn. 923, 159 A.3d 1171 (2017).

In the present case, the plaintiff, through the submission of affidavits and supporting documentary evidence, established that it is the holder of the note upon which Park City defaulted and the plaintiff foreclosed, and it submitted to the court an affidavit that included, and incorporated by reference, copies of the note, mortgage and assignment of the mortgage. The plaintiff, therefore, established its prima facie case. Accordingly, the defendants then were required to present evidence that demonstrated the existence of some disputed factual issue. We conclude, as did the trial court, that the defendants failed to meet their burden. We address each of the defendants' claims seriatim.

A

First, the defendants' claim that there are factual issues concerning the plaintiff's misapplication of pay-

ments is unsupported by the record. The defendants failed to produce competent evidence that would support their vague allegation in Carter's affidavit that "the plaintiff has miscalculated and overcharged me escrow amounts which were too high and which were paid by the defendant borrowers thereby preventing them from making the proper lower payments under this loan which would have prevented default on the part of the defendants . . . ." In particular, the defendants did not submit documentary evidence of *any* payments, nor did they specify how the "proper lower payments" should have been calculated. As a result, the defendants failed to demonstrate the existence of any genuine issue of material fact with regard to the miscalculation and/ or misapplication of payments by the plaintiff.

B

Second, the defendants' claim that there are factual issues concerning when Park City defaulted on the loan and whether the plaintiff's notice of default was proper is also unsupported by the record. The defendants claim that there are "issues concerning the precise date of the alleged default by the defendants and whether the plaintiff issued a proper notice of the default setting forth the specific date of default and the amount of default . . . ." Nevertheless, the defendants did not address the propriety of the notice of default or the accuracy of the specific date of default. In addition, aside from the vague allegation in Carter's affidavit regarding the miscalculation of escrow payments, the defendants did not address the accuracy of the amount that was claimed to be in default in the default notice. Simply put, there is nothing in the defendants' memorandum of law in opposition to summary judgment to demonstrate an issue of fact with regard to the propriety of the plaintiff's default notice.

C

Third, the defendants claim that there are "issues concerning the limited power of attorney used to endorse the mortgage note and assignment of the mortgage" to the plaintiff. Again, the defendants failed to recite specific facts, or submit documentary evidence, to demonstrate that there is an issue of fact with regard to the endorsements of the note or the assignment of the mortgage. Although the defendants made claims regarding the limited power of attorney in their supplemental memorandum of law in opposition to summary judgment, they did not attach any accompanying counteraffidavits that recited specific facts to rebut the plaintiff's affidavit and documentary evidence regarding the assignment of the note and mortgage. See *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 178, 73 A.3d 742 (2013) ("[i]t is axiomatic that in order to successfully oppose a motion for summary judgment by raising a genuine issue of material fact, the opposing party cannot rely solely on allegations that contradict those

offered by the moving party, whether raised at oral argument or in written pleadings; such allegations must be supported by counteraffidavits or other documentary submissions that controvert the evidence offered in support of summary judgment"). After concluding that the plaintiff had "supplied evidence of the authority for the signature in the form of a copy of the Limited Power of Attorney and a Supporting Affidavit," the court stated that the defendants had "submitted no contrary evidence." Accordingly, the trial court properly concluded that there was no genuine issue of material fact regarding the endorsement of the note or assignment of the mortgage.

D

Finally, the defendants' claim that there are "issues concerning the validity of the [federal loss affidavit] filed at the commencement of this action" is without merit. The court concluded that any issue of fact with regard to the plaintiff's federal loss affidavit did not need to be resolved prior to the granting of the motion for summary judgment as to liability. We similarly conclude that any issue regarding the validity of that affidavit is not an issue of material fact. Prior to filing the motion for a judgment of strict foreclosure, the plaintiff filed a new federal loss affidavit asserting that the loan was ineligible for any loss mitigation programs. The court accepted the new federal loss affidavit prior to rendering judgment. Therefore, whether the original federal loss affidavit was deficient is immaterial.

For those reasons, we conclude that the court did not err in granting the plaintiff's motion for summary judgment, after concluding that there was no genuine issue of material fact.

III

The defendants next claim that the trial court erred in determining that their special defenses were legally insufficient. Specifically, the defendants claim that they raised two legally sufficient special defenses: (1) that the loan was not in default because of "the plaintiff's misapplication of escrow and other payments made by [the defendants] in connection with this mortgage," and (2) that the plaintiff's conduct violated CUTPA. We disagree.

The defendants' special defenses are dependent upon their claim that the plaintiff incorrectly applied escrow payments or miscalculated the payments that were due pursuant to the note. The court concluded that the defendants failed to establish that the plaintiff misapplied or miscalculated payments due under the loan, and, therefore, their special defense related to a violation of CUTPA failed. Although we agree with the defendants that a claim that the loan is not in default is a valid special defense, we conclude that the court properly found that the defendants failed to establish a genu-

ine issue of material fact as to their special defenses. As previously discussed in this opinion, the defendants failed to provide the court with any evidence related to the plaintiff's alleged misapplication or miscalculation of their payments. The court, therefore, properly concluded that the defendants had failed to establish a genuine issue of material fact as to their special defenses. Accordingly, the court properly rejected the defendants' special defenses.[5]

## IV

The defendants' final claim is that the court improperly denied Carter's petition to participate in the foreclosure mediation program as an aggrieved person. We conclude that the defendants' claim is unreviewable.[6]

"This court reviews mortgage foreclosure appeals under the abuse of discretion standard. . . . A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *U.S. Bank, N.A.* v. *Morawska*, 165 Conn. App. 421, 425, 139 A.3d 747 (2016).

"It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . . Without an adequate record, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *Jezierny* v. *Jezierny*, 99 Conn. App. 158, 160–61, 912 A.2d 1127 (2007).

In the present case, the defendants argue that Carter "met all of the requirements set forth for mediation qualification" and that he "could have explored several loss mitigation programs" in mediation. Carter, who is not the mortgagor or the borrower, filed his petition to participate in mediation on April 15, 2014, approximately four months after the return date for the foreclosure action, November 26, 2013. See General Statutes § 49-31*l* (b) (2) ("a *mortgagor* may request foreclosure

mediation by submitting the foreclosure mediation request form to the court and filing an appearance *not more than fifteen days after the return date for the foreclosure action*" [emphasis added]). The court, *Bellis, J.*, heard oral argument on May 13, 2014. The court denied the petition, and the defendants did not move to reargue that decision. The defendants also did not file a motion for articulation to ascertain the basis of the court's decision, and they failed to request a transcript of that hearing. Accordingly, the record is inadequate for review and "any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *Jezierny* v. *Jezierny*, supra, 99 Conn. App. 160–61. Therefore, we decline to review the defendants' claim that the court abused its discretion when it denied Carter's petition for inclusion in the foreclosure mediation program.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint also named as defendants The Lamar Companies, successor in interest to Murphy, Inc., Fairfield County Bank, Stuart Rosenberg, William McCarthy, and Interbay Funding, LLC. In June, 2014, the trial court clerk granted the plaintiff's motion for default as to McCarthy and Interbay Funding, LLC, for their failure to file an appearance and as to Fairfield County Bank for its failure to plead. The Lamar Companies and Rosenberg filed answers to the complaint but did not contest the plaintiff's motions for summary judgment and for a judgment of strict foreclosure. Any reference to the defendants in this opinion is solely to Park City and Carter.

[2] Additionally, the defendants alleged that the plaintiff had "failed to mitigate the damages of the defendants in connection with this action. . . . Such damages have increased tremendously due to the negligent actions of the plaintiff in not properly crediting all amounts paid by [the] defendants." Although the defendants listed this allegation as a second special defense, it appears to allege, for a second time, that the plaintiff failed to credit the defendants' payments properly.

[3] On December 15, 2015, the plaintiff filed a motion to terminate the appellate stay, which the trial court granted on May 23, 2016. The defendants filed a motion for review of the trial court's order terminating the appellate stay, which this court granted but denied the relief requested therein. Approximately one year later, the plaintiff filed a motion to open and reset the law day on August 18, 2017, which the trial court granted on September 25, 2017, and it reset the law day to November 28, 2017, with all prior orders regarding the judgment remaining in effect. On October 12, 2017, after briefs had been submitted to this court, the defendants filed an amended appeal to challenge the trial court's September 25, 2017 order resetting the law day. Neither the plaintiff nor the defendants filed a request for supplemental briefing. Accordingly, the defendants' claims related to the judgment rendered on September 25, 2017, are deemed abandoned.

On October 13, 2017, the plaintiff filed a motion to dismiss the amended appeal and a motion to terminate the appellate stay and any future appellate stays. The trial court granted the plaintiff's motion to terminate the stay on November 7, 2017, thereby eliminating any future appellate stays, and the defendants filed a motion for review of that decision on November 24, 2017. On November 15, 2017, this court denied the plaintiff's motion to dismiss the amended appeal. On December 6, 2017, this court granted review, but denied the relief requested in the defendants' November 24, 2017 motion for review. Accordingly, there is currently no appellate stay in effect, and, therefore, there is no need for the resetting of the law day upon our resolution of this appeal. As of April 4, 2018, the law day is set for April 24, 2018.

[4] Judicial Branch form entitled Mortgage Foreclosure Standing Order Federal Loss Mitigation Programs, form JD-CV-117, provides in relevant part: "3. All mortgage foreclosure complaints filed in the Superior Court on and after September 1, 2010, shall be accompanied by a fully executed AFFIDAVIT Federal Loss Mitigation Programs, form JD-CL-114. . . . 5. If the plaintiff does not comply with the requirement to file a fully executed AFFIDAVIT

Federal Loss Mitigation Programs . . . under this order, a motion for default or motion for judgment filed by the plaintiff may not be granted until the affidavit is filed or upon order of the court." (Emphasis omitted.)

[5] Additionally, subsequent to the trial court's judgment in the present case, this court held that a CUTPA violation may not be asserted as a special defense in a foreclosure action. See *Bank of America*, *N.A.* v. *Aubut*, 167 Conn. App. 347, 374, 143 A.3d 638 (2016) ("[A] special defense operates as a shield, to defeat a cause of action, and not as a sword, to seek a judicial remedy for a wrong. Against this backdrop, we readily conclude that a CUTPA violation may not be asserted as a special defense. In reaching this conclusion, we are mindful that, by its express terms, CUTPA provides a cause of action for its violation, but it does not expressly provide a defense by invalidating, or otherwise rendering unenforceable, agreements that are the product of unfair trade practices.").

[6] In the final paragraph of their appellate brief, the defendants argue that Carter was "denied his due process rights to a hearing under the constitutions of the United States and state of Connecticut, and that he should be granted at the minimum a new trial on all aspects of this case, and a hearing on his right to federal loss mitigation options." To the extent that the defendants have framed this claim as a constitutional claim, we conclude that it is inadequately briefed.

"It is well established that we are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Darin* v. *Cais*, 161 Conn. App. 475, 483, 129 A.3d 716 (2015).

The defendants have failed to address why this *commercial* loan would qualify for a federal loss mitigation program, let alone why Carter, who is neither the mortgagor nor the owner of the property, has a "right" to federal loss mitigation programs. In fact, the defendants failed to cite even to the state or federal constitution. Accordingly, we decline to review the defendants' due process claim.

———————————————