******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## HOUSING AUTHORITY OF THE TOWN OF MANCHESTER *v.* BRANDON CYR ET AL.
### (AC 47023)

Elgo, Moll and Harper, Js.

*Syllabus*

The plaintiff housing authority appealed from the trial court's judgment dismissing its summary process action against the defendant tenant. The plaintiff claimed, inter alia, that the court improperly dismissed the action after concluding that the pretermination notice, also known as a *Kapa* notice, and the notice to quit were both invalid and, therefore, that the court lacked subject matter jurisdiction over the action. *Held*:

The trial court improperly determined that the *Kapa* notice sent to the defendant was invalid on the basis that the notice alleged conduct constituting serious nuisance that had occurred one year prior to its issuance, as there was no time requirement contained in the language of the statute (§ 47a-15) governing the form of a *Kapa* notice.

The trial court improperly determined that the *Kapa* notice sent to the defendant was invalid because it failed to refer to specific provisions of the lease or the statutory sections that had been violated as a result of the conduct alleged in the notice, as such specificity was not required pursuant to § 47a-15 or our case law and the notice identified eight specific instances of conduct by the defendant that constituted violations of the lease, the plaintiff's rules and regulations, and his obligations as a tenant pursuant to statute (§ 47a-11), and amounted to a nuisance, which was sufficient to inform the defendant and protect against premature, discriminatory, or arbitrary eviction.

The trial court improperly determined that the notice to quit was invalid or defective and, therefore, deprived the court of subject matter jurisdiction, as the notice sufficiently tracked the language of the relevant statute (§ 47a-23 (a) and (b)) and informed the defendant of the reasons for the notice to quit by setting forth specific instances of his conduct.

The trial court did not lack subject matter jurisdiction on the basis of the defendant's alternative argument that the plaintiff, which the defendant asserts was a federally subsidized landlord and was required to provide notices that complied with the requirements of the applicable federal statute (42 U.S.C. § 1437d (*l*)) and regulation (24 C.F.R. § 966.4 (*l*) (3)), failed to

provide sufficient information to the defendant regarding grievance procedures, as he provided no authority to support his claim that, as a result of this alleged insufficiency in the notices, the notices were invalid.

Argued October 8, 2024—officially released August 26, 2025

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Hartford, Housing Session, where the court, *Esperance-Smith, J.*, granted the named defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Michael S. Wrona*, for the appellant (plaintiff).

*Sally R. Zanger*, for the appellee (named defendant).

*Opinion*

HARPER, J. In this summary process action, the plaintiff, the Housing Authority of the town of Manchester, appeals from the judgment of dismissal rendered by the trial court in favor of the defendant Brandon Cyr.[1] On appeal, the plaintiff claims that the court improperly granted the defendant's motion to dismiss after concluding that the pretermination notice and notice to quit were invalid and that, therefore, it lacked subject matter jurisdiction to hear the summary process action. The defendant disagrees and further contends, for the first time on appeal and as an alternative ground for affirming the judgment of the trial court, that the pretermination notice and notice to quit did not comply with federal notice requirements, and, therefore, the court

---

[1] The plaintiff's complaint also named a John Doe defendant and a Jane Doe defendant (Doe defendants). Counts three and four of the complaint are directed against the Doe defendants, alleging that they never had a right or privilege to occupy the property leased to the defendant Brandon Cyr, or, in the alternative, that the Doe defendants once had such a right or privilege, but it has since terminated. The Doe defendants were nonappearing parties before the trial court and are not participating in this appeal. Accordingly, we refer in this opinion to Brandon Cyr as the defendant.

lacked subject matter jurisdiction.[2] We conclude that the court improperly dismissed this summary process action.

The following facts and procedural history are relevant to our review. On February 5, 2018, the plaintiff leased the property located at 56-F House Drive in Manchester (premises) to the defendant.[3] On March 5, 2023, the plaintiff sent the defendant a pretermination notice (*Kapa* notice)[4] notifying him of conduct constituting a

---

[2] As a matter of appellate procedure, we note that the defendant did not preserve this claim for review by filing a preliminary statement of issues in accordance with our rules of practice. Practice Book § 63-4 (a) (1) provides in relevant part: "If any appellee wishes to: (A) present for review alternative grounds upon which the judgment may be affirmed; (B) present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial; or (C) claim that a new trial rather than a directed judgment should be ordered if the appellant is successful on the appeal, that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues." See generally *State* v. *Martin M.*, 143 Conn. App. 140, 151, 70 A.3d 135 (this court may, but is not required to, review alternative ground for affirmance not raised in accordance with rules of practice so long as appellant will not be prejudiced), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).

Despite the defendant's noncompliance with our rules of practice, we will review his alternative ground for affirmance because it implicates the subject matter jurisdiction of the trial court and, therefore, may be raised at any time. See, e.g., *North Branford Citizens Against Bulk Propane Storage* v. *North Branford*, 230 Conn. App. 335, 341 n.5, 330 A.3d 196 (2025); *Robinson* v. *V. D.*, 229 Conn. App. 316, 325, 328 A.3d 198 (2024); *Milford Redevelopment & Housing Partnership* v. *Glicklin*, 228 Conn. App. 593, 602, 325 A.3d 971 (2024), cert. denied, 351 Conn. 902, 329 A.3d 239 (2025).

[3] We note that the record in this case does not contain the lease executed by the parties.

[4] A *Kapa* notice refers to the form of pretermination notice that is required under General Statutes § 47a-15, which provides in relevant part: "Prior to the commencement of a summary process action, except in [certain cases] . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. If such breach can be remedied by repair by the tenant or payment of damages by the tenant to the landlord, and such breach is not so remedied within such fifteen-day period, the rental agreement shall terminate except that (1) if the breach is remediable by repairs or the payment of damages and

serious nuisance pursuant to General Statutes § 47a-15,[5] nuisance pursuant to General Statutes § 47a-32,[6] violations of a tenant's statutory obligations pursuant to General Statutes § 47a-11,[7] violations of the lease and/or the plaintiff's rules and regulations, and/or a

the tenant adequately remedies the breach within such fifteen-day period, the rental agreement shall not terminate . . . ." See *Kapa Associates* v. *Flores*, 35 Conn. Supp. 274, 277–79, 408 A.2d 22 (1979).

[5] General Statutes § 47a-15 provides in relevant part: "For the purposes of this section, 'serious nuisance' means (A) inflicting bodily harm upon another tenant or the landlord or threatening to inflict such harm with the present ability to effect the harm and under circumstances which would lead a reasonable person to believe that such threat will be carried out, (B) substantial and wilful destruction of part of the dwelling unit or premises, (C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord, or (D) using the premises or allowing the premises to be used for prostitution or the illegal sale of drugs or, in the case of a housing authority, using any area within fifteen hundred feet of any housing authority property in which the tenant resides for the illegal sale of drugs. . . ." See also *Suburban Greater Hartford Realty Management Corp.* v. *Edwards*, 123 Conn. App. 295, 300, 1 A.3d 1138 (2010) (serious nuisance may be committed in one of four ways).

[6] General Statutes § 47a-32 provides: "In any action of summary process based upon nuisance, that term shall be taken to include, but shall not be limited to, any conduct which interferes substantially with the comfort or safety of other tenants or occupants of the same or adjacent buildings or structures."

[7] General Statutes § 47a-11 provides: "A tenant shall: (a) Comply with all obligations primarily imposed upon tenants by applicable provisions of any building, housing or fire code materially affecting health and safety; (b) keep such part of the premises that he occupies and uses as clean and safe as the condition of the premises permit; (c) remove from his dwelling unit all ashes, garbage, rubbish and other waste in a clean and safe manner to the place provided by the landlord pursuant to subdivision (5) of subsection (a) of section 47a-7; (d) keep all plumbing fixtures and appliances in the dwelling unit or used by the tenant as clean as the condition of each such fixture or appliance permits; (e) use all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances, including elevators, in the premises in a reasonable manner; (f) not wilfully or negligently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so; (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15; and (h) if judgment has entered against a

failure to require other persons on the premises with the defendant's consent to conduct themselves in a manner that will not disturb the neighbors' peaceful enjoyment of the premises or commit violations of the lease. The conduct set forth in the March, 2023 *Kapa* notice was alleged to have occurred in 2022 and included: (1) the defendant's June, 2022 arrest for breach of the peace in the second degree, use of drug paraphernalia, and assault in the third degree; (2) the defendant's use of illegal narcotics in the premises, which resulted in his near overdose; (3) the defendant's permitting another individual to consume narcotics in the premises; (4) the defendant's March, 2022 threatening statement to a neighbor; (5) the defendant's conduct, and his granting permission to those in the premises with his consent, to act in a manner that would disturb his neighbors' peaceful enjoyment or constitute violations of the lease; (6) the defendant's permitting unauthorized occupants to reside in the premises; (7) the defendant's September, 2022 arrest for breach of the peace in the second degree and threatening in the second degree; and (8) the defendant's November, 2022 arrest for violating the condition of release in the first degree. The *Kapa* notice further provided that, assuming such violations were subject to cure,[8] the defendant was required to do so by March 28, 2023.[9] Thereafter,

member of the tenant's household pursuant to subsection (c) of section 47a-26h for serious nuisance by using the premises for the illegal sale of drugs, not permit such person to resume occupancy of the dwelling unit, except with the consent of the landlord.''

[8] We note that not all alleged violations are subject to cure. See, e.g., *Housing Authority* v. *Harris*, 225 Conn. 600, 606, 625 A.2d 816 (1993) (''[a]lthough removing the person who sold drugs from the apartment will eliminate the cause of the nuisance, it cannot eliminate any effects of the drug sale that have already occurred''); *Housing Authority* v. *Brown*, 129 Conn. App. 313, 321–22, 19 A.3d 252 (2011) (legislature did not intend to create ability to ''repair'' drug related criminal activity with respect to § 47a-15).

[9] See footnote 5 of this opinion.

on April 18, 2023, the plaintiff served the defendant with a notice to quit possession for conduct in violation of the lease agreement, the plaintiff's rules and regulations, and the defendant's statutory obligations as a tenant pursuant to § 47a-11, as well as for conduct constituting a nuisance pursuant to § 47a-32, and/or serious nuisance pursuant to § 47a-15. The notice to quit reasserted the eight instances of conduct that had been listed in the *Kapa* notice as the reasons for the termination of the lease, and added the following: (1) the defendant's (and others on the premises with his consent) breaking of windows that occurred most recently in April, 2023; (2) the defendant's April, 2023 threat to harm his neighbor physically; (3) the use of the premises by John Doe and Jane Doe, who once may have had the right or privilege to so do, but such right or privilege has terminated; and (4) the use of the premises by John Doe and Jane Doe who never had the right or privilege to do so. The notice to quit also contained the following language: "The tenant has the following: (a) the right to reply to this [notice to quit]; (b) the right to inspect the file; and (c) the right to a grievance, if appropriate. . . ."

The defendant did not quit possession. The plaintiff then served the defendant with a summary process summons and complaint on June 16, 2023, seeking immediate possession of the premises. Three of the five counts were directed against the defendant[10] and alleged violations of a tenant's responsibilities pursuant to § 47a-11, lease violations, and nuisance.

On July 31, 2023, the defendant filed a motion to dismiss the complaint, along with a memorandum of law. See Practice Book § 10-30.[11] Specifically, he argued

[10] Counts three and four of the complaint were directed against the Doe defendants. See footnote 1 of this opinion.

[11] Practice Book § 10-30 (a) provides in relevant part: "A motion to dismiss shall be used to assert: (1) lack of jurisdiction over the subject matter . . . ."

that the notice to quit did not comply with General Statutes § 47a-23 (b) because it lacked sufficient information to allow him to prepare a defense. The defendant further contended that the notice to quit did "not state which of the alleged behaviors or incidents alleged is a violation of each statutory provision cited . . . [and did] not state which lease provision is alleged to have been violated." Finally, the defendant's motion to dismiss concluded by stating that, because the notice to quit did not advise him sufficiently to prepare a defense, it was invalid, and, therefore, the court lacked jurisdiction.

On August 10, 2023, the plaintiff filed an objection to the defendant's motion to dismiss. It asserted that it was not pursuing the summary process action on the ground of serious nuisance. The plaintiff further countered that the notice to quit provided the defendant with sufficient information to allow him to defend against the action, and, therefore, it was valid. The defendant filed a response to the plaintiff's objection four days later. The court, *Esperance-Smith, J.*, heard argument on the defendant's motion on August 15, 2023.[12]

On October 18, 2023, the court issued its memorandum of decision granting the defendant's motion to dismiss. It began its analysis by summarizing the positions of the parties as follows: "As it relates to the lease violation claim[s], the defendant argues that the lease agreement includes a list of acceptable reasons for termination of a public housing tenant's lease and that the notice to quit and the pretermination notice do not specify or clarify the lease provisions that are alleged to be violated sufficiently enough to allow the defendant

---

[12] At this hearing, the plaintiff repeated the representation in its objection to the defendant's motion to dismiss that it was not pursuing the summary process action on the basis of a serious nuisance.

to prepare a defense. The defendant further argues that the statutory language that was included in the notice to quit alleging grounds of violation of §§ 47a-11 and 47a-32 do not provide separate and distinct reasons for the tenant and does not set out the factual basis for the reasons. Therefore, according to the defendant, [the language of the notice to quit] makes it difficult for the defendant to decipher which provisions of the lease and statute are being invoked for which alleged incident or behavior. The plaintiff contends that the notice to quit provided detailed, specific, and sufficient information to allow the defendant to defend against the action, as required by statute.''

After setting forth the relevant legal principles, the court addressed the parties' arguments. First, it granted the motion to dismiss to the extent that the plaintiff had alleged serious nuisance due to the ambiguity in the complaint regarding such claim. The court then turned to the issue of the claims pertaining to nuisance and violations of the lease. It explained that the *Kapa* notice set forth conduct that began in April, 2022, and occurred throughout that year. The court reasoned: "The *Kapa* notice is intended to give the defendant notice of a defect and provide the defendant with fifteen days to cure the alleged defect, but if the acts upon which [it is] based occurred a year prior, the [*Kapa*] notice is improper. In the notice to quit . . . there is no supplemental [*Kapa*] notice which includes these events with an opportunity for the defendant to cure.'' The court further determined that "[t]he notice to quit fails to provide sufficient detail for the defendant to be apprised of what portions of the lease the defendant was in violation of or which of the many possible breaches of tenant obligations that are listed in the referenced statute that the plaintiff is proceeding on. The notice to quit must be carefully constructed so as to specify which counts the plaintiff is basing its summary process

action on. Additionally, a clear and concise pretermination notice must be sent to the defendant describing the violations alleged as well as providing the [defendant] with the opportunity to cure. *The plaintiff failed to serve a valid notice to quit that provided sufficient specificity to allow the defendant to prepare a defense to the summary process action.*" (Emphasis added.) For these reasons, the court granted the defendant's motion to dismiss the summary process complaint.

Thereafter, the plaintiff filed a motion for reargument and for clarification. It argued that the court improperly imposed an obligation to cite specific provisions in the lease that had been violated and that such a requirement is absent from the applicable statutes and case law. Additionally, the plaintiff contended that the court improperly engaged in a "hypertechnical dissection of the wording" of the notice to quit. Further, the plaintiff claimed that the conduct set forth in the *Kapa* notice was criminal in nature, and thus not subject to cure, and therefore it was irrelevant that the defendant was not provided an opportunity to cure. The defendant filed an objection to the motion to reargue and for clarification. On November 20, 2023, the court denied the plaintiff's motion without further discussion. This appeal followed.

I

The plaintiff principally claims that the court improperly granted the defendant's motion to dismiss its summary process action after concluding that the *Kapa* notice and the notice to quit were invalid. First, the plaintiff argues that the court improperly determined that the *Kapa* notice was invalid because it alleged conduct that had occurred one year prior to its issuance. Second, the plaintiff contends that the court improperly concluded that the *Kapa* notice was invalid because it

did not refer to specific provisions of the lease or statutory sections that had been violated as a result of the conduct alleged in these notices.[13] Finally, the plaintiff asserts that the court also improperly determined that the notice to quit was insufficient due to a lack of specificity. We agree with the plaintiff that the court, in granting the motion to dismiss, improperly concluded that the *Kapa* notice and notice to quit were invalid.

The following legal principles are relevant to our resolution of this claim. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . A claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings, including on appeal. . . . There is no doubt that the Superior Court is authorized to hear summary process cases . . . . The jurisdiction of the Superior Court in summary process actions, however, is subject to [certain] condition[s] precedent. . . . [B]efore a landlord may pursue its statutory remedy of summary process . . . the landlord must prove its compliance with all the applicable preconditions set by state and federal law for the termination of a lease. . . . When a defendant is a tenant of federally subsidized housing, federal law must be followed in addition to state law." (Citations omitted; internal quotation marks omitted.) *Milford Redevelopment & Housing Partnership* v. *Glicklin*, 228 Conn. App. 593, 602–603, 325 A.3d 971 (2024), cert. denied, 351 Conn. 902, 329 A.3d 239 (2025); see also *Housing Authority* v. *Stevens*, 209

---

[13] In its appellate brief, the plaintiff also argues that the court improperly granted the motion to dismiss after engaging in a hypertechnical dissection of the notices. We need not address this claim given our resolution in favor of the plaintiff.

Conn. App. 569, 577, 267 A.3d 927, cert. denied, 343 Conn. 907, 273 A.3d 234 (2022); *Housing Authority* v. *Rogriguez*, 178 Conn. App. 120, 126–27, 174 A.3d 844 (2017).

Additionally, we note that, "[w]hen a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Connecticut Center for Advanced Technology, Inc.* v. *Bolton Works, LLC*, 191 Conn. App. 842, 845, 216 A.3d 813, cert. denied, 333 Conn. 930, 218 A.3d 69 (2019).

Next, we briefly summarize the principles relating to a summary process action. "[S]ummary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *Housing Authority* v. *Stevens*, supra, 209 Conn. App. 575; see also *Sullivan* v. *Lazzari*, 135 Conn. App. 831, 836 n.5, 43 A.3d 750 (relief available in summary process

action is possession of premises), cert. denied, 305 Conn. 925, 47 A.3d 884 (2012); *Oxford House at Yale* v. *Gilligan*, 125 Conn. App. 464, 471, 10 A.3d 52 (2010) (summary process aimed at deciding simple question of who is entitled to possession). Guided by these principles, we turn to the specific arguments raised by the plaintiff in this appeal.

A

The plaintiff first argues that the court improperly determined that the *Kapa* notice was invalid because it alleged conduct that had occurred one year prior to its issuance. The defendant counters that the March 5, 2023 *Kapa* notice contained " 'stale' allegations" pertaining to conduct that had occurred in 2022, and, therefore, the court properly concluded that the *Kapa* notice in the present matter did not satisfy the requirements of § 47a-15. We agree with the plaintiff.

As an initial matter, we identify the relevant legal principles pertaining to a *Kapa* notice. "Pursuant to § 47a-15, before a landlord may proceed with a summary process action, except in those situations specifically excluded, the landlord must first deliver a [*Kapa*] notice to the tenant specifying the alleged violations and offer the tenant a . . . period to remedy. . . . The legislative purpose [of a *Kapa* notice] is to discourage summary evictions against first offenders . . . . *Section 47a-15 is separate from and preliminary to the maintenance of a summary process action* pursuant to . . . § 47a-23. . . .

"The text of § 47a-15 is clear and unambiguous: Prior to the commencement of a summary process action . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of

the notice. . . . [I]f substantially the same act or omission for which notice was given recurs within six months, the landlord may terminate the rental agreement in accordance with the provisions of [§§] 47a-23 to 47a-23b, inclusive." (Citations omitted; emphasis added; internal quotation marks omitted.) *Housing Authority* v. *Rodriguez*, 178 Conn. App. 120, 126–27, 174 A.3d 844 (2017); see also *Marrinan* v. *Hamer*, 5 Conn. App. 101, 104, 497 A.2d 67 (1985) (statute creates reconciliation period to allow errant tenants to remedy their first miscue). The *Kapa* notice has been described as a precondition to the right to serve a notice to quit. *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 593, 548 A.2d 744 (*Borden, J.*, dissenting), cert. denied, 209 Conn. 826, 552 A.2d 432 (1988); see also *Housing Authority* v. *Harris*, 225 Conn. 600, 605, 625 A.2d 816 (1993). Simply stated, a *Kapa* notice "must be sufficient to apprise the tenant of the information the tenant needs to protect herself against premature, discriminatory or arbitrary eviction. . . . To further this salutary purpose, the notice requirements of § 47a-15 must be construed strictly." (Internal quotation marks omitted.) *Housing Authority* v. *Harris*, supra, 605; see also *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 735, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011).

Resolving whether the trial court properly determined that a proper evaluation of a *Kapa* violation includes a consideration of whether the allegations were stale, we must engage in statutory interpretation. "[I]ssues of statutory interpretation constitute questions of law over which the court's review is plenary. The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [the court's] fundamental objective is

to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Commissioner of Public Health* v. *Colandrea*, 221 Conn. App. 631, 654, 302 A.3d 370 (2023), cert. denied, 348 Conn. 932, 306 A.3d 474 (2024); see also *Reverse Mortgage Solutions, Inc.* v. *Widow(er), Heir(s) and/or Creditors of the Estate of Beryl E. Rowland*, 231 Conn. App. 761, 770, 334 A.3d 1054 (2025); *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 647, 792 A.2d 165 (2002).

Section 47a-15 provides in relevant part: "Prior to the commencement of a summary process action, except in the case in which the landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based on nonpayment of rent, on conduct by the tenant which constitutes a serious nuisance or on a violation of subsection (h) of section 47a-11, if there is a material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or materially affects the physical condition of the premises, or if there is a material noncompliance by the tenant with the rental agreement or a material noncompliance with the rules and regulations adopted in accordance with section 47a-9, and the landlord chooses to evict based on such noncompliance, the landlord shall deliver a written notice to the tenant specifying the acts

or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. If such breach can be remedied by repair by the tenant or payment of damages by the tenant to the landlord, and such breach is not so remedied within such fifteen-day period, the rental agreement shall terminate except that (1) if the breach is remediable by repairs or the payment of damages and the tenant adequately remedies the breach within such fifteen-day period, the rental agreement shall not terminate; or (2) if substantially the same act or omission for which notice was given recurs within six months, the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive. . . .''

The text of § 47a-15 does not address the time frame in which a *Kapa* notice must be served on a tenant with respect to the alleged conduct that was the basis for the termination of the lease. "It is our duty to interpret statutes as they are written. . . . Courts cannot, by construction, read into statutes provisions which are not clearly stated. . . . The legislature is quite aware of how to use language when it wants to express its intent to qualify or limit the operation of a statute.'' (Internal quotation marks omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 152, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016); see *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 412, 999 A.2d 682 (2010) (courts are not in business of writing statutes, as that is province of legislature, and role of courts is to interpret statutes as written); *Glanz* v. *Commissioner of Motor Vehicles*, 210 Conn. App. 515, 524, 270 A.3d 766 (2022) (intent of drafters of statutes derived from words used); see also *State* v. *Obas*, 320 Conn. 426, 437–38, 130 A.3d 252 (2016) (Supreme Court rejected state's argument that ignored absence of temporal limitation in statutory text and engrafted such

limitation into statute); *Lamar* v. *Boehringer Ingelheim Corp.*, 138 Conn. App. 826, 835, 54 A.3d 1040 (this court is constrained to read statute as written and may not read into clearly expressed legislation provisions that do not find expression in its words), cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

The trial court did not cite to any authority for its conclusion that, "if the acts upon which [the *Kapa* notice] is based occurred a year prior, the [*Kapa*] notice is improper." In their respective briefs to this court, the parties have not provided us with any binding authority regarding this conclusion made by the trial court. We conclude, therefore, that the court improperly inserted a time requirement into § 47a-15 that is not contained in the statutory language. See, e.g., *Housing Authority* v. *Martin*, 95 Conn. App. 802, 813–14, 898 A.2d 245 (§ 47a-15 requires only that landlord deliver *Kapa* notice and that notice state that breach is not remediable; there is no statutory requirement that landlord further allege that continuing violation exists), cert. denied, 280 Conn. 904, 907 A.2d 90 (2006). Accordingly, we disagree with the conclusion of the trial court that such a requirement exists and that the *Kapa* notice in this case was invalid.

B

Next, the plaintiff argues that the court improperly concluded that the *Kapa* notice was invalid because it failed to refer to specific provisions of the lease or statutory sections that had been violated as a result of the conduct alleged in the notice. We agree and conclude that, contrary to the arguments of the defendant, such specificity is not required pursuant to the statutory language or our case law.

In its memorandum of decision, the trial court explained that, in a summary process case, the *Kapa* notice must be specific enough to allow the tenant to

recognize the violations and to either cure or defend against them. It stated further that "a clear and concise [*Kapa*] notice must be sent to the defendant describing the violations alleged as well as providing the defendant with the opportunity to cure." It would appear, therefore, that the court implicitly determined that the *Kapa* notice in the present case lacked sufficient specificity as part of its conclusion that it lacked subject matter jurisdiction over the plaintiff's summary process action.

In *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 520 A.2d 173 (1987), our Supreme Court addressed the standards by which to test the adequacy of notices sent to a defendant in a summary process action, including a *Kapa* notice. Id., 142–43. Specifically, it explained that, "[i]n order to demonstrate its compliance with the notices required for a proper termination, a landlord must show that the notices given to the tenant apprised her of the information a tenant needs to protect herself against premature, discriminatory or arbitrary eviction." Id., 143. To further this salutary purpose, the requirements of § 47a-15 must be construed strictly; however, strict construction does not require ritualistic compliance with statutory or regulatory mandates. Id., 143–44. It further noted that "judicial appraisal [of the sufficiency of a *Kapa* notice] must reflect the purpose that [such a notice was] meant to serve . . . [and] not every deviation from the strict requirements of either statutes or regulations warrants dismissal of an action for summary process. When good cause for termination of a lease has clearly been shown, and when notices of termination have been sent in strict compliance with statutory timetables, a landlord should not be precluded from pursuing summary eviction proceedings because of hypertechnical dissection of the wording of the notices that he has sent." (Citation omitted.) Id., 145; see also *Josephine Towers*, *L.P.* v. *Kelly*, 199 Conn. App. 829, 839–40, 238 A.3d 732 (§ 47a-15 requirements

were met where notice set forth violations of rental agreement, house rules and regulations, and material noncompliance with statutory obligations), cert. denied, 335 Conn. 966, 240 A.3d 281 (2020).

Additionally, this court has stated that the text of § 47a-15 clearly and unambiguously provides that the *Kapa* notice must specify, inter alia, the acts and omissions constituting the breach of the lease agreement. *Housing Authority* v. *Rodriguez*, supra, 178 Conn. App. 127. Neither the text of § 47a-15 nor the relevant case law imposes a requirement that the *Kapa* notice must set forth the precise statutory or lease violations based on the improper conduct alleged.

In the present case, the March, 2023 *Kapa* notice identified eight specific instances of conduct by the defendant—including his arrests, his use of illegal narcotics, his allowance of the use of narcotics on the premises, his threats made to a neighbor, and his allowance of unauthorized occupants to reside in the premises—that constituted violations of the lease, the plaintiff's rules and regulations, and his statutory obligations as a tenant, and amounted to a nuisance. We conclude that this *Kapa* notice was sufficient to inform the defendant and protect against premature, discriminatory, or arbitrary eviction. See *Housing Authority* v. *DeRoche*, 112 Conn. App. 355, 362, 962 A.2d 904 (2009); see also *Milford Redevelopment & Housing Partnership* v. *Glicklin*, supra, 228 Conn. App. 612 (*Kapa* notice provided information necessary for defendant to defend herself against possible eviction and thus was valid). We conclude, therefore, that the trial court's conclusion regarding the sufficiency of the *Kapa* notice was improper.

C

The plaintiff next claims that the court improperly concluded that the notice to quit was insufficient and,

therefore, the summary process complaint was subject to dismissal. Specifically, it argues that the court erred in its conclusion that the "notice to quit fails to provide sufficient detail for the defendant to be apprised of what portions of the lease the defendant was in violation of" because the relevant statute and case law do not contain such a requirement of specificity. We agree.

As an initial matter, we note that, "[b]efore the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity." (Internal quotation marks omitted.) *Suburban Greater Hartford Realty Management Corp.* v. *Edwards*, 123 Conn. App. 295, 299, 1 A.3d 1138 (2010); see also *St. Paul's Flax Hill Co-operative* v. *Johnson*, supra, 124 Conn. App. 734. Simply stated, there is no subject matter jurisdiction in the absence of a valid notice to quit. *Wilkes* v. *Thomson*, 155 Conn. App. 278, 281, 109 A.3d 543 (2015). Finally, we note that the notice to quit terminates the lease between the parties. *Towers* v. *Kelly*, supra, 199 Conn. App. 837; see also *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, 292 Conn. 459, 466, 974 A.2d 626 (2009); *St. Paul's Flax Hill Co-operative* v. *Johnson*, supra, 735.

In his motion to dismiss, the defendant argued that the plaintiff listed "specific allegations of actions . . . taken . . . by the defendant" in its notice to quit rather than setting forth "the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import . . . ." He further contends that the notice to quit fails to identify which allegations of improper behavior amount to a violation of the statutory provision cited, nor does it state which lease provisions are alleged to have been violated. In conclusion, the defendant claimed that, "[b]ecause the

notice to quit did not advise [him] sufficiently of the reasons for the action in order to permit him to prepare a defense, it is invalid." In granting the defendant's motion to dismiss, the court reasoned: "The notice to quit fails to provide sufficient detail for the defendant to be apprised of what portions of the lease the defendant was in violation of or which of the many possible breaches of tenant obligations that are listed in the referenced statute that the plaintiff is proceeding on. The notice to quit must be carefully constructed so as to specify which counts the plaintiff is basing its summary process action on. . . . The plaintiff failed to serve a valid notice to quit that provided sufficient specificity to allow the defendant to prepare a defense to the summary process action." "Summary process actions are governed by § 47a-23 (a), which provides in relevant part: When the owner or lessor . . . desires to obtain possession or occupancy of any land or building, any apartment in any building, [or] any dwelling unit . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons: (A) By lapse of time; (B) by reason of any expressed stipulation therein; (C) violation of the rental agreement or lease or of any rules or regulations adopted in accordance with section 47a-9 or 21-70 . . . (E) nonpayment of rent when due for commercial property; (F) violation of section 47a-11 . . . such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit . . . .

"Section 47a-23 (b) specifies the type of notice required when serving a notice to quit: The notice shall be in writing substantially in the following form: I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which

a trailer is used or stands, as the case may be), now occupied by you at (here insert the address, including apartment number or other designation, as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import, also the date and place of signing notice)." (Emphasis omitted; internal quotation marks omitted.) *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, 133 Conn. App. 1, 17–18, 33 A.3d 848 (2012).

In the present case, the April, 2023 notice to quit specified twelve instances of conduct by the defendant, or individuals in the premises acting with his consent, that "was done in violation of [the defendant's] [l]ease [a]greement, the [h]ousing [a]uthority's [r]ules and [r]egulations, constitutes a violation of your statutory obligations as a tenant pursuant to General Statutes § 47a-11, constitutes a nuisance pursuant to General Statutes § 42a-32 and/or serious nuisance pursuant to General Statutes § 47a-15." Our law recognizes that the notice to quit generally is considered adequate when the language of that notice tracks the language of § 47a-23 (a). *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 18; see also *Sullivan* v. *Lazzari*, supra, 135 Conn. App. 840; *Thomas E. Golden Realty Co.* v. *Society for Savings*, 31 Conn. App. 575, 580, 626 A.2d 788 (1993). In the present case, the plaintiff's notice to quit generally tracked the statutory language. The defendant argued, and the trial court agreed, that the notice to quit failed to provide sufficient detail to inform the defendant of the specific lease provisions and/or statutory sections on which the plaintiff was proceeding with respect to its efforts to end the lease and regain possession of the premises. We disagree, however, that our law requires such specificity.

In *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 1, the defendant claimed that the notice to quit had failed to sufficiently apprise it of the specific lease violations alleged by the plaintiff. Id., 15. The trial court determined that it was "plausible" that the defendant did not know all of the purported lease violations that the plaintiff would ultimately claim in its complaint, and, therefore, the notice to quit was invalid. Id., 16. As a result of this conclusion, the trial court dismissed the counts of the complaint based on the claimed lease violations. Id.

On appeal, this court reached a contrary conclusion on the basis that the notice to quit sufficiently apprised the defendant of the alleged lease violations because it tracked the statutory language of § 47a-23 (a) and (b). Id. Specifically, we noted that the notice to quit contained language that informed the defendant to quit possession or occupancy for violations of the lease, which is one of the bases set forth in the relevant statutory framework. Id., 18; see General Statutes § 47a-23 (a) (1) (C). Furthermore, the language in the notice to quit regarding violations of the lease tracked the language of § 47a-23 (b). *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 18. This court further concluded: "Although the notice to quit did not lay out specifically the alleged lease violations, the notice tracked the statutory language . . . . Because the notice to quit adequately met the requirements of § 47a-23, the court improperly dismissed count one for lack of subject matter jurisdiction." (Footnote omitted.) Id., 19–20.

The plaintiff's notice to quit in the present case, like the notice to quit in *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, supra, 133 Conn. App. 1, tracked the statutory language and generally informed the defendant of the reasons for the notice to quit and the termination of the lease between the parties. It therefore

was not defective so as to deprive the trial court of jurisdiction. The requirement imposed on the plaintiff by the court in this matter simply is not found in the statutory language or our case law. The notice to quit set forth specific instances of conduct by the defendant, such as his assorted arrests, his use of illegal narcotics, his allowing others to consume narcotics, his threats to a neighbor, and his allowing unauthorized occupants to reside in the premises. Furthermore, the notice to quit also generally informed the defendant that such conduct was done in violation of the lease agreement, the rules and regulations of the plaintiff, his statutory obligations as a tenant pursuant to § 47a-11, and constituted a nuisance. It is not required that the plaintiff identify the specific lease provisions or statutes that such conduct violated. See General Statutes § 47a-15. It is "inconceivable" that the defendant was not aware of the conduct that formed the basis of the termination of his lease. *Southland Corp.* v. *Vernon*, 1 Conn. App. 439, 452–53, 473 A.3d 318 (1984). Accordingly, we conclude that the court improperly determined that the notice to quit was invalid or defective.

## II

The defendant claims, as an alternative ground for affirming the judgment of the trial court, that the plaintiff's notices did not comply with federal notice requirements, and, as a result, the court lacked subject matter jurisdiction. Specifically, he argues that the plaintiff's notices were insufficient under federal law because they informed the defendant only that he was entitled to a grievance hearing if such a proceeding was appropriate. We are not persuaded.

"When a defendant is a tenant of federally subsidized housing, federal law must be followed in addition to state law." (Internal quotation marks omitted.) *Milford Redevelopment & Housing Partnership* v. *Glicklin*, supra, 228 Conn. App. 603; see also *Presidential Village*,

*LLC* v. *Perkins*, 332 Conn. 45, 56, 209 A.3d 616 (2019). "Under federal law, 42 U.S.C. § 1437d (*l*)[14] and 24 C.F.R.

[14] Section 1437d (*l*) of title 42 of the United States Code provides in relevant part: "Each public housing agency shall utilize leases which . . . (4) require the public housing agency to give adequate written notice of termination of the lease which shall not be less than—

"(A) a reasonable period of time, but not to exceed 30 days—

"(i) if the health or safety of other tenants, public housing agency employees, or persons residing in the immediate vicinity of the premises is threatened; or

"(ii) in the event of any drug-related or violent criminal activity or any felony conviction;

"(B) 14 days in the case of nonpayment of rent; and

"(C) 30 days in any other case, except that if a State or local law provides for a shorter period of time, such shorter period shall apply;

"(5) require that the public housing agency may not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause;

"(6) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy;

"(7) specify that with respect to any notice of eviction or termination, notwithstanding any State law, a public housing tenant shall be informed of the opportunity, prior to any hearing or trial, to examine any relevant documents, records, or regulations directly related to the eviction or termination;

"[8] provide that any occupancy in violation of section 13661 (b) of this title (relating to ineligibility of illegal drug users and alcohol abusers) or the furnishing of any false or misleading information pursuant to section 13662 of this title (relating to termination of tenancy and assistance for illegal drug users and alcohol abusers) shall be cause for termination of tenancy; [and]

"(9) provide that it shall be cause for immediate termination of the tenancy of a public housing tenant if such tenant—

"(A) is fleeing to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which the individual flees, for a crime, or attempt to commit a crime, which is a felony under the laws of the place from which the individual flees . . . or

"[B] is violating a condition of probation or parole imposed under Federal or State law.

"For purposes of paragraph [6], the term 'drug-related criminal activity' means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in section 802 of Title 21)." (Footnotes omitted.)

§ 966.4 (*l*) (3),[15] a landlord is required to issue a pretermination notice before commencing a summary process action." (Footnotes added.) *Housing Authority* v. *Martin*, supra, 95 Conn. App. 808.

In his brief to this court, the defendant asserts, without citation to the record, that the plaintiff is a federally subsidized landlord. He then states that the plaintiff is therefore required to comply with the requirements of 42 U.S.C. § 1437 (*l*) and 24 C.F.R. § 966.4 (*l*) (3). Pursuant to this federal authority, the defendant contends that the plaintiff was required to notify him of his right to a grievance hearing in accordance with the plaintiff's grievance procedures when such a hearing is required. See 24 C.F.R. § 966.4 (*l*) (3) (ii) (2023). Additionally, he argues that, if such a hearing was not required and the defendant had decided to exclude a grievance concerning termination of the lease under its procedures, then

---

[15] Section 966.4 (3) of title 24 of the Code of Federal Regulations provides in relevant part: "(iii) A notice to vacate which is required by State or local law may be combined with, or run concurrently with, a notice of lease termination under paragraph (*l*) (3) (i) of this section.

"(iv) *When the* [*public housing authority* (*PHA*)] *is required to afford the tenant the opportunity for a hearing under the PHA grievance procedure for a grievance concerning the lease termination* (see § 966.51 (a) (1)), *the tenancy shall not terminate* (even if any notice to vacate under State or local law has expired) *until the time for the tenant to request a grievance hearing has expired, and* (if a hearing was timely requested by the tenant) *the grievance process has been completed.*

"(v) *When the PHA is not required to afford the tenant the opportunity for a hearing under the PHA administrative grievance procedure for a grievance concerning the lease termination* (see § 966.51 (a) (2)), *and the PHA has decided to exclude such grievance from the PHA grievance procedure, the notice of lease termination* under paragraph (*l*) (3) (i) of this *section shall:* (*A*) *State that the tenant is not entitled to a grievance hearing on the termination.* (*B*) *Specify the judicial eviction procedure to be used by the PHA for eviction of the tenant, and state that* [*Department of Housing and Urban Development* (*HUD*)] *has determined that this eviction procedure provides the opportunity for a hearing in court that contains the basic elements of due process as defined in HUD regulations.* (*C*) *State whether the eviction is for a criminal activity* as described in § 966.51 (a) (2) (i) (A) *or for a drug-related criminal activity* as described in § 966.51 (a) (2) (i) (B)." (Emphasis added.)

the notices were required to (1) notify the defendant that he is not entitled to a grievance hearing, (2) specify the judicial eviction procedure to be used and state that the federal government has determined that this procedure provides the opportunity for a hearing in court that contains the basic elements of due process as defined in this context, and (3) state whether the eviction was for criminal activity or drug related criminal activity. See 24 C.F.R. § 966.4 (*l*) (3) (v) (C) (2023).

For the first time on appeal, the defendant claims that the plaintiff's notices failed to meet the requirements of federal law. Specifically, he notes that the notices merely informed him, inter alia, of his right to reply and the right to a grievance hearing, if appropriate.[16] Essentially, the defendant contends that the information regarding a grievance hearing contained in the plaintiff's notices was insufficient by merely stating that he was entitled to a grievance hearing, if appropriate. The defendant further contends that he was not required to show prejudice, and, as a result of the plaintiff's failure to comply with federal statutory and regulatory requirements, the notices were invalid and the trial court lacked jurisdiction to hear the summary process action.

In its reply brief, the plaintiff counters that the defendant "essentially argues that any minor deviation from 24 C.F.R. § 966.4 must automatically lead to a dismissal." It further contends that this argument is contrary to our law, citing *Jefferson Garden Associates* v.

---

[16] In the present case, the *Kapa* notice contained the following information: "The tenant has the following: (a) the right to reply to this [n]otice and (b) the right to a grievance hearing, if appropriate, and (c) the right to inspect the findings. The [l]ease cannot terminate until after the cure date referenced above." The notice to quit provided the defendant with the following information: "The tenant has the following: (a) the right to reply to this [n]otice; (b) the right to inspect the file; and (c) the right to a grievance, if appropriate. The [l]ease cannot terminate until the grievance deadline has passed or the grievance, if requested, has been conducted."

*Greene*, supra, 202 Conn. 128, and *Housing Authority* v. *Curtis*, Superior Court, judicial district of Danbury, Docket No. SP-05-12308 (March 27, 2006) (41 Conn. L. Rptr. 129) (court concluded that tenant's claim that landlord failed to include specific language from federal regulation constituted hypertechnical attack that exalted form over substance and determined that notice complied with said regulation despite minor deviation). Our Supreme Court has emphasized that, with regard to both state and federal law, a landlord, in demonstrating its compliance with the notices required to proceed with a summary process action, must show that the notices apprised the tenant of the information needed to protect against premature, discriminatory, or arbitrary eviction. *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 143 (citing *Joy* v. *Daniels*, 479 F.2d 1236, 1241 (4th Cir. 1973), and *Anderson* v. *Denny*, 365 F. Supp. 1254, 1260 (W.D. Va. 1973)). Ritualistic compliance with statutory or regulatory mandates is not required. *Jefferson Garden Associates* v. *Greene*, supra, 144. It further explained: "For such tenants [of federally subsidized housing], despite a recognition that a loss of federally subsidized housing implicates due process rights under the fifth amendment to the United States constitution, federal law has moved away from requiring either a special federal forum or special federal forms. Federal courts have concluded that a tenant's right to fair adjudication of good cause for the termination of his tenancy can be vindicated by recourse to the normal judicial process of state court eviction procedures." Id.

Given this development, our Supreme Court concluded that judicial evaluation of compliance with both federal and state requirements for notices regarding the termination of a lease must reflect the purpose that these notices were meant to serve. Id., 145. "As we have held in other contexts, in which regulatory and

constitutional rights were also implicated . . . *not every deviation from the strict requirements of either statutes or regulations warrants dismissal of an action for summary process. When good cause for termination of a lease has clearly been shown, and when notices of termination have been sent in strict compliance with statutory timetables, a landlord should not be precluded from pursuing summary eviction proceedings because of hypertechnical dissection of the wording of the notices that he has sent.*" (Citation omitted; emphasis added.) Id.

In the present case, the reasons underlying the termination of the lease contained in the plaintiff's notices constituted good cause for terminating the lease. See id., 145–46. The defendant does not argue to the contrary. Instead, he baldly asserts that the notices were insufficient with respect to the information contained therein regarding the matter of a grievance hearing. He has not provided us any authority to support his claim that, as a result of this claimed deficiency regarding the availability of a grievance hearing, the court lacked subject matter jurisdiction over the summary process action.[17] In light of our Supreme Court's reasoning in *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 128, and the general presumption in favor of jurisdiction, we conclude that the plaintiff's lack of strict compliance in this matter did not render its notices defective so as to deprive the trial court of subject matter jurisdiction.

---

[17] We note that a landlord's failure to comply with the federal statutory requirements has been held to be enforceable in other procedural contexts. See *Poole* v. *Housing Authority*, 202 F. Supp. 3d 617, 623–25 (W.D. La. 2016) (failure to comply with federal housing statutes resulted in summary judgment rendered in favor of tenant); see also *Samuels* v. *District of Columbia*, 770 F.2d 184, 193–98 (D.C. Cir. 1985) (private enforcement of housing statute and regulations available under 42 U.S.C. § 1983); *Conway* v. *Housing Authority*, 239 F. Supp. 2d 593, 597–99 (W.D.N.C. 2002) (noting that Congress intended to give public housing tenant right to enforce grievance procedures through private right of action pursuant to 42 U.S.C. § 1983).

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.